**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GEORGE GOULD,

*Plaintiff*,

v.

CITY OF NEW HAVEN, ET AL.,

*Defendants*.

No. 3:25-cv-934 (KAD)

MARY MURPHY-TAYLOR,

*Plaintiff*,

v.

CITY OF NEW HAVEN, ET AL.,

*Defendants*.

No. 3:25-cv-935 (KAD)

August 26, 2026

**DEFENDANT CITY OF NEW HAVEN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BIFURCATE AND STAY DISCOVERY ON PLAINTIFFS' MONELL CLAIM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 2

I. Bifurcating Plaintiffs' Monell claims for discovery and trial would serve judicial economy. ........ 3

II. Bifurcating would avoid prejudice to Defendants without prejudicing Plaintiffs. ........ 7

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. City of Saratoga Springs*,
170 F.3d 311 (2d Cir. 1999) .......... 3, 7, 8

*Anthony v. City of Bridgeport*,
2015 WL 3745302 (D. Conn. 2015) .......... 8

*Aquino v. City of New York*,
2017 WL 2223921 (S.D.N.Y. May 19, 2017) .......... 1

*Bradford v. City of Chicago*,
2019 WL 5208852 (N.D. Ill. 2019) .......... 9

*Ciraolo v. City of New York*,
216 F.3d 236 (2d Cir. 2000) .......... 6

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) .......... 9

*Gavin v. City of New York*,
2021 WL 3774113 (S.D.N.Y. Aug. 24, 2021) .......... 1, 3, 7

*Mineo v. City of New York*,
2013 WL 1334322 (E.D.N.Y. 2013) .......... 7, 8

*Monell v. Department of Social Services*,
436 U.S. 658 (1978) .......... *passim*

*Morales v. Irizarry*,
1996 WL 609416 (S.D.N.Y. Oct. 22, 1996) .......... 3, 5

*Morant v. City of New Haven*,
No. 22-cv-630 (SVN), D.E. 263 .......... 6, 10

*Padilla v. City of New York*,
1993 WL 5833 (S.D.N.Y. 1993) .......... 6

*Reynolds v. Giuliani*,
506 F.3d 183 (2d Cir. 2007) .......... 5

*Santiago v. City of New York*,
1992 WL 116605 (S.D.N.Y. 1992) .......... 8

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006) ........ 1, 5

*Singer v. Olympia Brewing Co.*,
878 F.2d 596 (2d Cir. 1989) ........ 5

*Veal v. Kachiroubas*,
2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ........ 8

**Statutes**

42 U.S.C. § 1983 ........ 9

General Statutes § 52-557n ........ 5

**Rules**

D. Conn. Local Rule 16 ........ 2

Federal Rule of Civil Procedure Rule 30(b)(6) ........ 4

Federal Rule of Civil Procedure Rule 42(b) ........ 2

## INTRODUCTION

"It is well-established that a plaintiff must [first] prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*." *Aquino v. City of New York*, 2017 WL 2223921, at *1 (S.D.N.Y. May 19, 2017). Thus, if a plaintiff fails to prove his or her claims against the individual officers, there is no need to proceed with discovery or trial on the derivative *Monell* claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). "It has long been the position of courts in the Second Circuit that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to address the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Gavin v. City of New York*, 2021 WL 3774113, at *5 (S.D.N.Y. Aug. 24, 2021) (collecting cases).

The City of New Haven—with the consent of the Individual Defendants—asks the Court to follow "the most prudent course" here by staying further discovery on Plaintiffs' *Monell* claims (Count V of Gould's Fourth Amended Complaint, D.E. 108, and Count V of Murphy-Taylor's Third Amended Complaint, D.E. 105) and separating those derivative claims for trial only if necessary after a trial of Plaintiffs' claims against the Individual Defendants. Bifurcating Plaintiffs' *Monell* claims would serve judicial economy by streamlining discovery and trial, since most potential

outcomes of a trial on Plaintiffs' individual claims would render a trial on the *Monell* claims unnecessary. *See infra* at 3–7. Moreover, it would protect both the City and the individual officers from undue prejudice that would result if they are grouped together as defendants at trial. *See infra* at 7–11.

## BACKGROUND

Plaintiffs filed suit on June 11, 2025. *See Murphy-Taylor*, D.E. 1; *Gould*, D.E. 1. On September 10, 2025, after the parties' Rule 16 scheduling conference, the Court ordered the two cases to be consolidated for purposes of discovery. *See Murphy-Taylor*, D.E. 80; *Gould*, D.E. 82. The parties exchanged initial disclosures in November 2025. Since that time, the City has responded to Plaintiffs' requests for production for documents relating to the Individual Defendants. However, significant *Monell* discovery has yet to be completed in this case, including expert disclosures, expert depositions, 30(b)(6) depositions, and interviews and depositions of other officers who were active during the relevant time period but had no involvement with the investigation or prosecution of Plaintiffs. There is currently no trial scheduled, and discovery is not scheduled to close until January 31, 2027. *See Murphy-Taylor*, D.E. 81; *Gould*, D.E. 83.

## ARGUMENT

Under Rule 42(b) of the Federal Rules of Civil Procedure, courts have considerable discretion to order the separate trial of distinct issues or claims "[f]or convenience, to avoid prejudice, *or* to expedite and economize." Fed. R. Civ. P. 42(b) (emphasis added). The Second Circuit has held that "bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate

the second issue, *or* where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (emphasis added).

Bifurcation of trial, and discovery, is particularly appropriate (and common) where a plaintiff pursues claims against individual police officers and against the municipality that employed them, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Indeed, in cases involving both individual and *Monell* claims, "[t]he overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizarry*, 1996 WL 609416, at *1 (S.D.N.Y. Oct. 22, 1996); *see also, e.g.*, *Gavin*, 2021 WL 3774113, at *5 (observing that "[i]t has long been the position of courts in the Second Circuit" that bifurcation of *Monell* claims is "the most prudent course").

## I. Bifurcating Plaintiffs' Monell claims for discovery and trial would serve judicial economy.

*Monell* discovery is extremely time-consuming and costly for all parties. While constitutional claims against individual defendants can be litigated in a fairly direct manner, *Monell* claims require proof not only that the individual officers violated the plaintiff's constitutional rights, but that they did so pursuant to, or as a result of, a policy or practice of violating constitutional rights in that manner. *See generally*

*Monell*, 436 U.S. at 694. Proving such a policy or practice is no small feat. Particularly where a department's formal written policies expressly *prohibit* the sorts of violations alleged, a plaintiff must amass considerable evidence—from police records, witnesses, and likely experts—to show that, in fact, the department fostered a practice or custom of *violating* its written policies that was so widespread as to have the force of law.

This case illustrates just how burdensome and time-consuming *Monell* discovery can be. Even though there has been no stay of *Monell* discovery to date, there remains a great deal to be done in order to prove (or disprove) that NHPD fostered a pattern and practice of suppressing exculpatory evidence so widespread as to have the force of law in 1993. Plaintiffs must gather sufficient testimony from former police officers to show that, despite formal policies requiring that exculpatory evidence be turned over to prosecutors (and, in turn, defendants), the de facto practice was to suppress evidence. Likewise, the City will need to gather testimony from as many officers as possible to rebut Plaintiffs' evidence. Assuming Plaintiffs notice a Rule 30(b)(6) deposition, the City will also have to devote significant time and expense to identifying and preparing an appropriate witness, given the passage of time since the events in question. Beyond that, both parties will likely need to obtain and disclose experts on police practices at considerable additional expense.[1]

---

[1] To be sure, some fact witnesses who are deposed in connection with Plaintiffs' claims against the individual officers may also possess information that could be relevant to the *Monell* claims. The City would, of course, have no objection to these witnesses being questioned on both sets of claims, rather than having to be deposed twice. Similarly, to the extent the City has already produced written policies and other evidence that may bear on the *Monell* claims, it does not seek to claw it back or preclude Plaintiffs from using it. But even allowing for *Monell* discovery that has

Given the derivative nature of *Monell* claims, it is possible that all of this time and expense will ultimately be unnecessary. *See, e.g.*, *Morales*, 1996 WL 609416, at *1. Most obviously, if Plaintiffs fail to prove their claims against the Individual Defendants, then there can be no derivative municipal liability under *Monell*, and therefore no need for costly *Monell* discovery. *See generally Segal*, 459 F.3d at 219. Given "the stringent causation and culpability requirements" of a *Monell* claim, *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007), that is the likely outcome in the majority of similar cases.

But even assuming that Plaintiffs prove their claims against the Individual Defendants, there would be no need for discovery and trial on their *Monell* claims if there is another basis on which they may hold the City liable. For example, Plaintiffs allege that the City must indemnify the Individual Defendants for any compensatory damages awarded under Counts I, IV, or VIII of their operative complaints. *See* D.E. 105, Cnt. XIII; D.E. 108, Cnt. X. And they contend that the City is directly liable for their damages under General Statutes § 52-557n. D.E. 105, Cnt. XIV; D.E. 108, Cnt. XI. In either of these scenarios, the *Monell* claim would be rendered superfluous, and therefore moot, as Plaintiffs cannot recover compensatory damages twice, *see, e.g.*, *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) (recognizing "the one satisfaction rule, which provides that a plaintiff is entitled to only one satisfaction for

---

already been completed or which might be obtained in the course of discovery on the individual claims, *completing Monell* discovery will still require significant expenditures of time and money on both sides, which may be avoided entirely if the *Monell* claims are bifurcated going forward.

each injury”), and punitive damages cannot be assessed against a municipality, *see, e.g.*, *Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000).

The only scenarios in which a *Monell* trial (and related discovery) would be necessary are if the officers are found to have committed a constitutional violation, but (a) are also found to be entitled to qualified immunity, or (b) are unable to pay the judgment against them and there is no basis for indemnification or derivative liability for the City. And even in those scenarios, there remains the possibility that a settlement would avoid the need for discovery and trial on the *Monell* claims. *See, e.g.*, *Padilla v. City of New York*, 1993 WL 5833, at *1 (S.D.N.Y. 1993) (“If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case.”). Thus, the majority of possible outcomes of an initial trial against the Individual Defendants would render the *Monell* claim moot and *Monell* discovery unnecessary.

In addition to potentially eliminating the need for burdensome discovery, bifurcation would also simplify and streamline the trial itself. A trial in which the jury is asked to determine only whether one or more Individual Defendants violated Plaintiffs’ rights, causing their alleged injuries, would be relatively straightforward. A trial in which the jury is also asked to determine whether any proved violation was itself substantially caused by a widespread policy or practice of constitutional violations would be considerably more complex and would require significantly more time. The recent trial of *Morant v. City of New Haven*, 3:22-cv-630 (SVN), which involved similar underlying and *Monell* allegations, stretched on for 21 days,

including 15 days of testimony, with much of that time, including entire witnesses, dedicated exclusively to the *Monell* claims. The parties retained dueling expert witnesses on police practices, and fought over evidence of unrelated incidents of alleged police misconduct that were entirely irrelevant to the claims against the individual officers, but relevant to the derivative question whether there was a pattern or practice of violating constitutional rights at the time in question.[2]

It is for these reasons that "[c]ourts in the Second Circuit are generally in favor of bifurcating *Monell* claims." *Mineo v. City of New York*, 2013 WL 1334322, at *1 (E.D.N.Y. 2013). Simply put, "the most prudent course is to address the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Gavin,* 2021 WL 3774113, at *5.

## II. Bifurcating would avoid prejudice to Defendants without prejudicing Plaintiffs.

Bifurcation would not only avoid imposing burdensome discovery obligations on the parties unless and until necessary; it would avoid causing undue prejudice to Defendants at trial, without prejudicing Plaintiffs.

The Second Circuit has instructed that "bifurcation may be appropriate where one party will be prejudiced by evidence presented against another party." *Amato*, 170 F.3d at 316. The potential for prejudice is easy to see with respect to individual

[2] To prove his *Monell* claim, Morant introduced evidence of similar allegations raised by three other individuals, sparking "mini trials" to determine whether a civil-rights violation had occurred as to each, whether City policymakers were aware of the violations, what actions were taken with respect to each, whether command staff condoned them, and whether the individual defendants were aware of any such condonation.

officers, because "[t]he type of evidence [a] [p]laintiff would have to present in order to prevail on his *Monell* claims—evidence showing that the City had a practice of condoning or encouraging civil rights violations," *Anthony v. City of Bridgeport*, 2015 WL 3745302, at *2 (D. Conn. 2015), "could dangerously infect the jury's consideration of the individual claim[s]," *Mineo*, 2013 WL 1334322, at *1; *see also, e.g.*, *Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("[E]vidence . . . regarding [an entity]-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the [individual defendants] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly in this case."). This is so even though "[t]he potentially voluminous evidence of the Municipal Defendants' policies or customs will simply not be probative of whether [the individual defendants] inflicted a constitutional injury." *Santiago v. City of New York*, 1992 WL 116605, at *3 (S.D.N.Y. 1992). Thus, courts in this Circuit (and beyond) have routinely ordered or approved bifurcation when *Monell* evidence might cause prejudice to individual defendants. *See, e.g.*, *Amato*, 170 F.3d at 316 (approving bifurcation where introduction of "personnel records of police officers . . . as well as a history of all claims of excessive force brought against the entire Police Department" would prejudice individual defendants); *Anthony*, 2015 WL 3745302, at *2 (bifurcating where evidence of "personnel records of police officers and

a history of all claims of excessive force brought against the department" would prejudice individual defendants).

At the same time, grouping a municipality together with individual defendants accused of violating a plaintiff's constitutional rights may unduly prejudice the municipality. *First*, where (as here) a plaintiff raises multiple theories of municipal liability, there is a risk that the jury will confuse the issues and find the municipality liable for violation of the plaintiff's constitutional rights without finding a widespread custom or practice, as required by *Monell*. *See, e.g.*, *Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. 2019) (agreeing that "a combined trial in which the jury is asked to weigh evidence of both individual employee misconduct and City policy risks that *Monell* would devolve into a *respondeat superior* claim, a risk easily avoidable by bifurcating the *Monell* claim") (internal quotation marks removed).

*Second*, in cases involving especially egregious alleged misconduct on the part of one or more individual defendants, there is a risk of evidence admissible against the bad actor(s) tainting the other defendants, including the City. That risk is particularly acute where, as here, the plaintiff seeks punitive damages against one or more individual defendants. Though "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), where the claims against the municipality are not bifurcated, a plaintiff may argue for, and introduce evidence to support, punitive damages against

the individual defendants, which may influence the jury's assessment of the claims against all defendants, including the municipality.

The recent *Morant* case illustrates how the City might be prejudiced if the *Monell* claims are not bifurcated.[3] There, the plaintiff sought punitive damages against a particularly unsympathetic defendant, Vincent Raucci. This allowed the plaintiff to introduce a great deal of evidence concerning Raucci's poor character, including evidence that he had attempted to intimidate a witness in the case. Then, just before the case was submitted to the jury, the plaintiff unilaterally withdrew his claim for punitive damages against Raucci, leaving the jury with no place to channel the anger that evidence had generated except through compensatory damages. As a result, the jury returned a de facto punitive damages award of $38 million, all in noneconomic damages. Plaintiffs here are represented by the same counsel as the plaintiff in *Morant* and can be expected to follow the same strategy. There is thus a serious risk that the City will be tainted by whatever evidence (including admissible character evidence) Plaintiffs are able to introduce against the Individual

[3] In *Morant*, the District Court (Nagala, J.) denied the City's motion to bifurcate, filed after the close of discovery and just weeks before trial, finding that bifurcation would not serve judicial economy and that the City's suggestion that the individual defendants would be prejudiced was undermined by the fact that no individual defendant joined its motion. *See Morant v. City of New Haven*, No. 22-cv-630 (SVN), D.E. 263. Here, discovery is ongoing and the motion is filed well before trial. Moreover, each of the individual defendants has consented to the City's motion, which raises concerns about prejudice not only to them, but to the City itself.

Defendants, and the jury may be manipulated into awarding a de facto punitive amount of damages, despite the unavailability of punitive damages against the City.

While there is a significant risk of prejudice to both the Individual Defendants and the City if the claims are not separated, bifurcation would cause little or no prejudice to Plaintiffs. At most, Plaintiffs will be spared the expense of further *Monell* discovery unless and until it becomes necessary after a trial of their individual claims. As described above, most possible outcomes of the trial would render further *Monell* litigation unnecessary, but if Plaintiffs do wish to proceed, there will be nothing standing in the way.

**CONCLUSION**

Bifurcating the *Monell* claims and staying *Monell* discovery would serve the interests of judicial economy and mitigate potential prejudice to the City and the Individual Defendants, while not causing undue prejudice to Plaintiffs. Accordingly, the Court should follow "the most prudent course" and grant the City's motion.

Respectfully submitted,

/s/ *Tadhg Dooley*

Tadhg Dooley (ct29364)
Daniel Passeser (ct32099)
Armando Ghinaglia (ct31859)
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400
tdooley@wiggin.com
dpasseser@wiggin.com
aghinaglia@wiggin.com

*Counsel for Defendant City of New Haven*